**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KEAN JENNINGS<br>4232 Heathrow Court, Unit F<br>Harrisburg, PA 17109<br><br>       Plaintiff,<br><br>       v.<br><br>HIGHMARK, INC. d/b/a<br>HIGHMARK BLUE CROSS BLUE<br>SHIELD<br>1800 Center Street<br>Camp Hill, PA 17011<br><br>And<br><br>HIGHMARK, INC.<br>120 Fifth Avenue<br>Pittsburgh, PA 15222<br><br>       Defendants. | JURY DEMANDED<br><br><br>No. |

**CIVIL ACTION COMPLAINT**

**I. Parties and Reasons for Jurisdiction.**

1.    Plaintiff, KEAN JENNINGS (hereinafter "Plaintiff") is an adult individual residing at the above address.

2.    Defendant, HIGHMARK, INC. d/b/a HIGHMARK BLUE CROSS BLUE SHIELD (hereinafter "BCBS") is a business corporation organized by and operating under the laws of the Commonwealth of Pennsylvania and having a headquarters at the above captioned address.

3.    Defendant, HIGHMARK, INC. (hereinafter "Highmark") is a business corporation organized by and operating under the laws of the Commonwealth of Pennsylvania and having a headquarters at the above captioned address.

4.    At all times material hereto, Defendant qualified as Plaintiff's employer pursuant to Title VII of the Civil Rights Act and as defined under Pennsylvania law.

5.    This action is instituted pursuant to the United States Civil Rights Act and the Pennsylvania Human Relations Act.

6.    Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343.

7.    Supplemental jurisdiction over the Plaintiff's state law claim is conferred pursuant to 28 U.S.C. § 1367.

8.    Plaintiff has exhausted her administrative remedies pursuant to the Equal Employment Opportunity Act and the Pennsylvania Human Relations Act. (See Exhibit A, a true and correct copy of a "right-to-sue" letter issued by the Equal Employment Opportunity Commission.)

9.    Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant conducts business in this district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district. Plaintiff was working in the Middle District of Pennsylvania at the time of the illegal actions by Defendant as set forth herein.

## II. Operative Facts.

10.    Plaintiff is an African-American woman.

11.    On or about February 1, 2014, Defendant hired Plaintiff as a claims processor, working out of their Camp Hill, Pennsylvania location as captioned above.

12. During the duration of her employment, Plaintiff was promoted to the position of claims auditor, the position she held at the time of her termination.

13. In or around 2018, Defendant's assigned Connie Canofari, a Caucasian woman, as the manager of Plaintiff's department.

14. At that time, Plaintiff was one (1) of only two (2) African-American employees working under Ms. Canofari.

15. Beginning immediately upon Ms. Canofari assuming this managerial position, Plaintiff observed that Ms. Canofari was only reporting errors made by Plaintiff and the other African-American employee, which affected their overall accuracy scores, while ignoring errors made by the rest of the team.

16. In or around 2019, Plaintiff was inadvertently added to an Instant Message conversation between Ms. Canofari and another lead employee, Charlene.

17. In this conversation, Ms. Canofari and Charlene were discussing that both Plaintiff and the other African-American employee were showing in the system as being "away" from their desks.

18. Charlene messages Ms. Canofari pointing out this "away" status and stating "I just can't with [Plaintiff and the other African-American employee] and the disrespect they show."

19. Upon information and belief, the other African-American employee who was mentioned in this conversation made a complaint to Defendant's Human Resources department.

20. Upon information and belief, this employee was terminated by Defendant shortly after making this complaint.

21.    Plaintiff also made a complaint to Human Resources regarding the disparate treatment she was facing in terms of her errors and accuracy being recorded while other non-African American employees' were not.

22.    Despite making this complaint, the discriminatory, disparate treatment toward Plaintiff continued.

23.    Following her complaint and the termination of the only other African-American employee under Ms. Canofari's supervision, Plaintiff began to experience even harsher scrutiny.

24.    Rules regarding errors were being applied to Plaintiff but not other employees, or Ms. Canofari would overlook their errors altogether.

25.    Ms. Canofari created new rules for testing accuracy but, upon information and belief, was only applying these rules to Plaintiff.

26.    Plaintiff made multiple complaints and had three separate meetings with Ms. Canofari's manager, Lori Ashby, regarding the discriminatory and disparate treatment she was facing; however, nothing was done and Ms. Canofari's conduct was allowed to continue.

27.    Plaintiff even requested that Ms. Ashby reassign her to a different department and away from Ms. Canofari's management, but her requests were denied.

28.    On or about September 23, 2020, Defendant terminated Plaintiff's employment purportedly due to her accuracy score.

29.    At that point, Plaintiff had made several complaints regarding Ms. Canofari's discriminatory treatment of her with respect to errors and her accuracy which was never corrected nor addressed.

30.    Defendant's motivation in terminating Plaintiff's employment was her race and in retaliation for her complaints of racial discrimination.

31.    As a direct and proximate result of Defendants' conduct in terminating Plaintiff, he sustained great economic loss, future lost earning capacity, lost opportunity, loss of future wages, as well emotional distress, humiliation, pain and suffering and other damages as set forth below.

## III. Causes of Action.

### COUNT I
### TITLE VII CLAIM--RETALIATION
### (42 U.S.C.A. § 2000e-3(a))

32.    Plaintiff incorporates paragraphs 1-31 as if fully set forth at length herein.

33.    At set forth above, Plaintiff, made complaints to Defendant concerning racial discrimination and disparate treatment that was being directed towards her.

34.    In retaliation for making these complaints, Defendant took adverse action against Plaintiff by terminating her employment.

35.    Plaintiff's participation in protected activity under Title VII was a motivating factor in Defendant's decision to terminate her employment.

36.    As such, Defendant's decision to terminate Plaintiff's employment is a retaliatory action contemplated by Civil Rights Act of 1964, § 704(a).

37.    As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, pain and suffering, consequential damages and Plaintiff also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

38.    As a result of the conduct of Defendant's owners/management, Plaintiff hereby demands punitive damages.

39.    Pursuant to the Civil Rights Act of 1964, § 704(a), 42 U.S.C. §2000e-3(a), et seq Plaintiff demands attorneys fees and court costs.

## COUNT II – EMPLOYMENT DISCRIMINATION
### (42 U.S.C.A. § 2000e-2(a))

40.    Plaintiff incorporates paragraphs 1-39 as if fully set forth at length herein.

41.    Defendant took adverse action against Plaintiff by terminating her employment.

42.    Plaintiff's status as an African-American woman places her in a protected class.

43.    Plaintiff was subjected to a hostile work environment during her employment with Defendant.

44.    Plaintiff's membership in a protected class was a motivating factor in Defendant's decision to terminate her employment.

45.    Plaintiff suffered disparate treatment by Defendant, as set forth above.

46.    As such, Defendant's decision to terminate Plaintiff's employment is an unlawful employment practice, under 42. U.S.C. § 2000e-2(a).

47.    As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

48.    As a result of the conduct of Defendant's owners/management, Plaintiff hereby demands punitive damages.

49.    Pursuant to the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), et seq Plaintiff demands attorneys fees and court costs.

## COUNT III
## PENNSYLVANIA HUMAN RELATIONS ACT
### 43 Pa.C.S.A. §951, et seq.

50.    Plaintiff incorporates paragraphs 1-49 as if fully set forth at length herein.

51.    As set forth above, Plaintiff is a member of a protected class.

52.    Defendant terminated Plaintiff's employment.

53.    As set forth above, a motivating factor in the decision to terminate Plaintiff's employment was Plaintiff's complaints regarding a pattern of racially discriminatory conduct on the part of the employer.

54.    Plaintiff's membership in a protected class was a motivating factor in Defendant's decision to terminate her employment.

55.    Plaintiff suffered disparate treatment by Defendant, as set forth above.

56.    Plaintiff was subjected to a hostile work environment, as described above.

57.    As such, Defendant has violated the Pennsylvania Human Relations Act, 43 Pa.C.S.A. §951, et seq.

58.    As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

59. As a result of the conduct of Defendant's owners/management, Plaintiff hereby demand punitive damages.

60. Plaintiff demands attorneys' fees and court costs.

## IV. Relief Requested.

**WHEREFORE,** Plaintiff, KEAN JENNINGS demands judgment in her favor and against Defendant, HIGHMARK, INC. d/b/a HIGHMARK BLUE CROSS BLUE SHIELD and HIGHMARK, INC., in an amount in excess of $150,000.00 together with:

A.  Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages. Lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering

B.  Punitive damages;

C.  Attorneys fees and costs of suit;

D.  Interest, delay damages; and,

E.  Any other further relief this Court deems just proper and equitable.

LAW OFFICES OF ERIC A. SHORE, P.C.

BY: _____

**GRAHAM F. BAIRD, ESQUIRE**
Two Penn Center
1500 JFK Boulevard,  Suite 1240
Philadelphia, PA 19102

Attorney for Plaintiff, Kean Jennings

Date:  7/29/2021